UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Julie B.-Z.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

**23-CV-0535-LJV**
**DECISION & ORDER**

---

On June 14, 2023, the plaintiff, Julie B.-Z. ("Julie"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.*  On November 13, 2023, Julie moved for judgment on the pleadings, Docket Item 4; on October 10, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 6; and on October 24, 2023, Julie replied, Docket Item 7.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Julie applied for Supplemental Security Income ("SSI").  SSI is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive SSI, and the Social Security Administration uses a five-step evaluation process to determine eligibility.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Julie's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I. **THE ALJ'S DECISION**

On March 25, 2022, the ALJ found that Julie had not been under a disability since filing her protective application for SSI on April 30, 2020. *See* Docket Item 3 at 31. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a). *See id.* at 21-22.

At step one, the ALJ found that Julie had not engaged in substantial gainful activity since April 30, 2020. *Id.* at 22. At step two, the ALJ found that Julie suffered from five severe, medically determinable impairments: unspecified depressive disorder, unspecified anxiety disorder, chronic obstructive pulmonary disease, history of cervical fusion surgery, and seizure disorder. *Id.*

At step three, the ALJ found that Julie's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 23-26. More specifically, the ALJ found that Julie's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), *id.* at 23; 1.16 (lumbar spinal stenosis)*, id.*; 1.18 (abnormality of a major joint in any extremity), *id.* at 23-24;

3

3.02 (chronic respiratory disorders), *id.* at 24; or 3.03 (asthma), *id*. The ALJ likewise found that Julie's mental impairments did not meet or medically equal listing 12.04 or 12.06 (depressive, bipolar, or related disorders). *Id.* at 24. In assessing Julie's mental impairments, the ALJ found that Julie was: (1) not impaired in understanding, remembering, or applying information; (2) not impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) markedly impaired in adapting or managing herself. *Id.* at 24-25.

The ALJ then found that Julie had the residual functional capacity ("RFC")[4] to "perform a reduced range of sedentary work" except that:

> [Julie] can occasionally lift/carry ten pounds. During an eight-hour workday, she can sit for six hours and stand/walk for two hours; however, she requires a sit/stand option for five minutes every hour while remaining on task. She cannot climb ladders/ropes/scaffolds, climb ramps/stairs, stoop, kneel, crouch, or crawl. She cannot perform pushing, pulling, or overhead reaching. She should avoid heights and heavy machine operation. She should avoid extreme cold, extreme heat, bronchial irritants (noxious fumes, odors, dust, and gases), chemicals, and poorly ventilated areas. She will be off task up to 10% of the workday.

*Id.* at 26.

At step four, the ALJ found that Julie had no past relevant work. *Id.* at 29. But given Julie's age, education, and RFC, the ALJ found at step five that Julie could perform substantial gainful activity as an order clerk, document preparer, and assembler. *Id.* at 30; *see Dictionary of Occupational Titles ("DOT")* 209.567-014, 1991

---

[4] A claimant's RFC is the most she "can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

WL 671794 (Jan. 1, 2016); *id.* at 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016). Therefore, the ALJ found that Julie had not been under a disability or entitled to SSI since her application was filed on April 30, 2020. *See* Docket Item 3 at 31.

## II.     ALLEGATIONS

Julie argues that the ALJ erred in two ways. Docket Item 4–1. First, she argues that the ALJ's highly specific RFC was unsupported by substantial evidence. *Id.* at 8. More specifically, Julie argues that the ALJ never explained how she determined Julie to have a "five-minute sit/stand opinion and 10% off task" limitation. *Id.* Second, Julie argues that the ALJ failed "to reconcile obvious conflicts at step five." *Id.* at 11. This Court agrees that the ALJ erred and, because that error was to Julie's prejudice, remands the matter to the Commissioner.

## III.    ANALYSIS

For claims filed on or after March 27, 2017, such as Julie's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.,* 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (internal quotation marks omitted) (quoting 20 C.F.R. § 416.920(c)(a)). Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or she] finds the medical opinions in the case record." *Id.* (citing 20 C.F.R. § 416.920c(b)). The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support the opinion; (2) the consistency between the opinion and the record;

5

(3) the provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The ALJ always must explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and the ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors."  *Id.* § 416.920c(b)(2).

### A. THE OFF-TASK LIMITATION AND STAND/SIT OPTION

The ALJ crafted an RFC that included two highly specific limitations.  First, the ALJ found that Julie could perform work that would allow her to be off task no more than ten percent of the workday.  Docket Item 3 at 26.  The ALJ found this limitation "due to [Julie's] ongoing psychiatric symptoms." *Id.* at 29.  Second, the ALJ found that Julie "requires a sit/stand option for five minutes every hour" because of her "complaints of pain/numbness and difficulty staying in one position."  Id. at 26, 28.

In formulating that RFC, the ALJ rejected the opinion of Julie's treating physician, Renata Anand, M.D., who—as the ALJ noted—opined that Julie had significant "postural limitations" and would need "extensive off-task time." *Id.* at 26.  In fact, Dr. Anand had found that because Julie could sit for only 30 minutes and stand for only 10 minutes at a time, she would need a job that allowed her to shift from standing and sitting "at will," not just for five minutes each hour.  *Compare id*. at 582-83 *with id*. at 26.  Dr. Anand also found that Julie would miss more than four days of work each month because of her impairments.  *Id*. at 584.  And as to whether Julie would have time off task during the workday, Dr. Anand opined that Julie required an unscheduled break

6

"every [thirty] minutes," and would, on average, need "[thirty] minutes" of rest before returning to work. *Id.* at 583.

Of course, as long as the ALJ adequately addressed the factors noted above, she was entitled to reject Dr. Anand's opinion that Julie would be off task more than ten percent of the time and would need an option to sit or stand more often than every hour and for longer than five minutes. *Angela H.-M.,* 631 F. Supp. 3d 1; 20 C.F.R. § 416.920(c)(a)).[5]  But if the ALJ rejects a specific limitation found by a physician, the ALJ cannot simply create a lesser specific limitation out of whole cloth. *Tomicki v. Berryhill*, 2018 WL 703118, at *4 (W.D.N.Y. Jan. 11, 2018). Instead, the ALJ must tether the specific limitation to medical evidence or opinions. *Jordan v. Berryhill,* 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018). And here, the ALJ did not cite any opinions or medical evidence to support the specific limitation in the RFC. As this Court has held repeatedly, that was error.

For example, in *Elder v. Comm'r of Soc. Sec.,* 2019 WL 6320355 (W.D.N.Y. Nov. 26, 2019), this Court remanded because "nothing in the record support[ed] the ALJ's specific RFC determination that Elder would be off task for no more than 'five minutes . . . per hour,'" *id*., 2019 WL 6320355, at *5.  Likewise, in *Tara W. v. Comm'r of Soc. Sec.,* 2021 WL 4316824 (W.D.N.Y. Sept. 23, 2021), this Court remanded when the ALJ found that the "[p]laintiff can be off task 5% of the day" but "failed to explain *where* that

---

[5] The ALJ may well have erred in not adequately addressing the supportability and consistency factors as required. 20 C.F.R. § 416.920c(b)(2). For example, the ALJ never addressed the amount of evidence Dr. Anand presented to support her opinion, and the ALJ's analysis of whether that opinion was consistent with the record was largely conclusory. *See* Docket Item 3 at 28. Nevertheless, because the Court remands on other grounds, it does not reach that issue.

specific percentage of 5% came from, or why he assessed that percentage as opposed to one higher or lower . . ..'' 2021 WL 4316824, at *3 (emphasis in original) (citing *Mariani v. Colvin,* 567 F. App'x 8, 10 (2d Cir. 2014) (summary order)); *see also Wouters v. Comm'r of Soc. Sec.,* 2020 WL 2213896, at *3 (W.D.N.Y. May 7, 2020) (remanding when ALJ did not "point to any evidence in the record suggesting why [p]laintiff would be off-task for [5% of the] time,"); *Annis v. Comm'r of Soc. Sec.,* 2019 WL 6875231, at *10 (W.D.N.Y. Dec. 17, 2019) (finding that ALJ did not have "good reasons" to support specific mental RFC determination that plaintiff would be off task no more than 5% of the workday).

In other words, "[s]pecific RFC assessments," including the "percentage of time spent off task during a workday, must be based on evidence in the record, not on an 'ALJ's surmise.'" *See Tara,* 2021 WL 4316824, at *3 (quoting *Cosnyka v, Colvin,* 574 F. App'x 43, 46 (2d Cir. 2014) (summary order)). If a physician opines that a claimant will be off task 20% of the time and the ALJ rejects that opinion, the ALJ cannot simply pick a smaller percentage—say, 12% or 7% or 5%—based on the ALJ's own lay judgment. And without a "tether" between the specific limitation and the medical record, *Jordan,* 2018 WL 5993366, at *3, this Court cannot perform its required meaningful review of the ALJ's decision. *See Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)) (holding that ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that '… a reviewing court … may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review,'"); *see also Laura C. v. Comm'r of Soc. Sec.,* 529 F. Supp 3d 64, 71 (W.D.N.Y. 2021) (finding that

meaningful judicial review was precluded where Court was left to speculate as to ALJ's reasoning).

In sum, the ALJ erred when she rejected the specific limitations in a physician's opinion and then created a lesser specific limitation without medical support. That error requires remand.

### B. APPARENT CONFLICT BETWEEN THE TESTIMONY OF THE VOCATIONAL EXPERT AND THE DOT

If the ALJ relies on the testimony of a vocational expert ("VE"), the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2).[6] More specifically, "[w]hen a VE … provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that . . . evidence and information provided in the DOT." SSR 00-4P, 2000 WL 1898704, at *4 (emphasis added); *see also Lockwood,* 914 F.3d at 94

---

[6] SSR 00-4P "clarifies the [Social Security Administration's] standards for using a VE." *Spears v. Colvin,* 2016 WL 4973890, at *4 (W.D.N.Y. Sept. 18, 2016). The ruling gives the ALJ the responsibility of determining whether the VE's testimony is consistent with the DOT:

> At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

9

(explaining that ALJ must "undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one" (quoting *Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353, 1364 (11th Cir. 2018)))). And "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P, 2000 WL 1898704, at *2.

Here, the ALJ found that Julie had the RFC to perform a reduced range of sedentary work with the additional limitation that she "cannot perform . . . overhead reaching." Docket Item 3 at 26. Given that limitation, Julie argues that there is an apparent conflict between the VE's testimony that Julie could work as an order clerk, document preparer, and assembler and the description of those jobs in the DOT. Docket Item 4-1 at 11-13. This Court agrees.

The DOT states that work as an order clerk, document preparer, and assembler all require "reaching" on a "frequent" basis. *See* DOT 209.567-014, 1991 WL 671794 (Jan. 1, 2016); *id.* at 249.587-018, 1991 WL 672349 (Jan. 1, 2016); *id.* at 713.687-018, 1991 WL 679271 (Jan. 1, 2016). "Reaching" is defined as "extending the hands and arms *in any direction*." SSR 85-15 1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added). Based on that definition, the Second Circuit has held that "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching[ ]' . . . creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." *Lockwood,* 914 F.3d at 92 (emphasis in original).

The ALJ noted that she "asked the vocational expert whether jobs exist in the national economy for an individual with [Julie's] age, education, work experience, and residual functional capacity." Docket Item 3 at 30. The ALJ also said that the VE "indicated that her testimony regarding . . . overhead reaching . . . is based on her professional experience as the DOT is silent on th[at] issue[]." *Id.* But the DOT is not "silent" on that issue. And while the Commissioner argues that "the ALJ resolved any apparent conflict with the DOT" because "the ALJ directly questioned the VE regarding the basis of her opinion as to overhead reaching, and she testified that her opinion was based upon her professional experience," Docket Item 6-1 at 17, the ALJ improperly relied on that testimony without explicitly addressing the conflict and "elicit[ing] a reasonable explanation for [it]." SSR 00-4P, 2000 WL 1898704, at *2. Because the ALJ failed to address the apparent conflict between the VE's testimony and the DOT, remand is necessary.

**CONCLUSION**

.

In sum, the ALJ did not base her highly specific RFC limitations on evidence in the record and failed to address an apparent conflict between the VE's testimony and the DOT's description of the jobs that the ALJ found Julie could perform. Therefore, the Commissioner's motion for judgment on the pleadings, Docket Item 6-1, is DENIED, and Julie's motion for judgment on the pleadings, Docket Item 4-1, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     March 28, 2024
              Buffalo, New York

                                              *Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE